UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION – RIVERSIDE

LORIA GILL,

        Plaintiff,

v.                                         5:09cv01309-WS-DTB

CITY OF MURRIETA, et al.,

        Defendants.

_____

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In 2007, the plaintiff, Loria Gill ("Gill"), was arrested and charged with forgery and burglary in Riverside County, California.  After the charges were dismissed for failure to prosecute,[1] Gill filed a five-count complaint in this court seeking damages for alleged violations of her civil rights.

Before the court at this time are the defendants' motion for summary judgment (doc. 13), Gill's response (doc. 15) in opposition to the motion, and the defendants' reply (doc. 17, ex. 1) to Gill's response.  Gill has advised the court that she offers no opposition to the defendants' motion with regard to Counts 2 through 5.  Accordingly, the court will address only the first count, wherein Gill alleges that the defendants arrested her without probable cause.  The parties have been advised (doc. 19) that the motion would be taken under advisement as of a date certain.

_____

[1] This court has been advised by the clerk of court in Riverside County that the charges were dismissed for lack of speedy trial.

I.

In support of their motion for summary judgment, the defendants have submitted declarations that reveal the following:

Cecilia Williams ("Williams") is the owner and operator of Cal Oaks Therapy Center, Inc. ("Cal Oaks").  Gill was employed at Cal Oaks for approximately two and one half years before she was terminated in late December of 2006 for absenteeism. Gill assisted with record keeping at Cal Oaks during the years of her employment.

In February of 2007, after Williams called the Murrieta Police Department to report a forgery, Officer Michael Jacob ("Jacob") was dispatched to Cal Oaks to investigate.  Upon his arrival at Cal Oaks, Jacob was given a copy of a bank statement, attached to which were photo copies of two checks that had recently passed through Cal Oaks's business account.  Jacob was advised by Williams that check number 5158, made payable to Gill in the amount of $2,760, and check number 5159, made payable to Gills's business (Simply Documents) in the amount of $930.86, were not authorized or signed by Williams.  Jacob learned from Bank of America's Fraud Department that, on January 2, 2007, the checks were deposited into Gill's account.

Jacob was also told by Williams that, on December 28, 2006, Williams called the Murrieta Police Department to report that Gill had failed to return a laptop and various work files to Cal Oaks.  In addition, Jacob learned from Williams that, on Saturday, December 30, 2007, Williams was informed that the alarm at Cal Oaks had been activated by a person identifying herself as Loria Gill.  The alarm company reported that Gill was on the premises without the proper code.

After Jacob's report of his interview with Williams was forwarded to the Riverside Sheriff's Department, Detective D. Dean ("Dean") was assigned to conduct a follow-up investigation into the events reported by Williams.  Dean thereafter talked with Williams in April and May of 2007.  Among other things, Williams told Dean that she was suing Gill in small claims court for the theft of a work computer and work files.  Williams also told Dean that she wanted Gill to be prosecuted regarding checks 5158 and 5159. Williams informed Dean that, while she did not write or authorize either check, the signatures may, in fact, have been her own.  Williams explained that, at one time, she gave Gill several signed—but otherwise blank—checks, instructing Gill to use the checks to pay certain vendors.  Gill was supposed to return any unused pre-signed checks to Williams.  Williams told Dean that she was not sure whether Gill used and/or returned all such checks.  Williams suggested that Gill could have taken the checks from the office when she entered—without authorization—on a Saturday after she was terminated.  Williams said that Gill knew where to find checks because they were kept on a shelf just above what had been Gill's work station.

On or about May 7, 2007, Dean phoned Gill to ask if she would be willing to visit the Lake Elsinore station to discuss the checks.  Two days later, Gill voluntarily appeared at the station where she was interviewed by Dean.  According to Dean, Gill was advised of her Miranda rights upon her arrival.[2]

---

[2]  Gill says that Dean advised her of her Miranda rights during the interview, "[a] few minutes before [she] was arrested."  Because Gill was not "in custody" while she was being interviewed by Dean, Dean did not violate Gill's Miranda rights even if Gill's assertion as to timing is credited.

In her discussions with Dean, Gill confirmed that she had been terminated from her job at Cal Oaks.  When asked about the two checks that had been deposited into her bank account on January 2, 2007, Gill explained that check number 5158 (in the amount of $2,760) was for severance pay and that check number 5159 (in the amount of $930.86) was for bills related to her business, Simply Documents.[3]  Although she could not remember what day she received the checks, Gill said that Williams left them in an envelope for her at the front counter at Cal Oaks.  Gill told Dean that a new employee, whose name was Gloria, handed her the envelope.

Dean asked Gill if she had been in the office on December 30, 2006, the day the alarm went off and a woman identified herself to the alarm company as Loria Gill. Although Gill could not be sure exactly what day the alarm went off, she remembered going back into the office—perhaps on Saturday, January 6, 2007—to pick up her refrigerator and to return a computer and files.  She explained that the alarm went off when she entered the office because Williams had changed the code.

Based on the statements made by Gill and Williams, Dean informed Gill that she was under arrest for forgery, passing a forged check, and burglary.  Gill was later charged by information, but the charges were ultimately dismissed for lack of prosecution.  Gill then filed this action for damages pursuant to 42 U.S.C. § 1983.

II.

---

[3]  Gill told Dean that Williams owed her back pay and vacation pay on top of the severance pay.  Gill informed Dean that she had sued Williams—without success—in small claims court, seeking back pay and vacation pay.

An arrest is supported by probable cause if, under the totality of circumstances known to the arresting officer at the time of the arrest, "a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." Crowe v. County of San Diego, 608 F.3d 406, 432 (9th Cir. 2010) (alteration in original) (citation and quotation marks omitted).  Neither certainty nor high probability is required for an officer to conclude that he has probable cause to arrest.  Instead, the officer's conclusion need only be fairly probable.  United States v. Brooks, 610 F.3d 1186, 1193 (9th Cir. 2010).  The officer, moreover, has no obligation to give credence to a suspect's self-serving statements, and he has no obligation to investigate fully before making a probable cause determination.  See, e.g., United States v. Sarras, 575 F.3d 1191, 1219 (11 Cir. 2009) (noting that a suspect's self-serving denial, on its own, does not defeat probable cause); Spalsbury v. Sisson, 250 Fed. Appx. 238, 246 (10th Cir. 2007) (explaining that a policeman "is under no obligation to give any credence to a suspect's story, and even a plausible explanation in no way requires the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause") (internal quotation marks, alteration, and citation omitted).

Here, at the time of Gill's arrest, Dean had the following information that could support a finding of probable cause: (1) Williams, the owner and operator of Cal Oaks, reported a forgery, asserting repeatedly that she did not write or authorize check numbers 5158 and 5159, one each made payable to Gill and to Gill's business; (2) the checks were deposited into Gill's bank account; (3) after Williams terminated Gill's employment, Gill entered Cal Oaks on a Saturday, triggering the alarm system; and (4)

the alarm company reported to Williams that a woman, identifying herself as "Loria Gill," was on the premises of Cal Oaks on Saturday, December 30, 2007, without the proper code.  This information alone provided Dean with probable cause to arrest Gill.  That Gill herself denied Williams's forgery allegations[4] does not change the fact that the totality of the circumstances known to Dean at the time of Gill's arrest was sufficient to cause a prudent person to conclude that there was a fair probability that Gill had committed a crime.[5]

Accordingly, it is ORDERED:

1.  The defendants' motion for summary judgment (doc. 13) is GRANTED as to all counts.

2.  The clerk shall enter judgment in the defendants' favor.  Costs shall be taxed against Gill.

DONE AND ORDERED this ____26th____ day of ___January___, 2011.


s/ William Stafford_____
WILLIAM STAFFORD
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF FLORIDA
(SITTING BY DESIGNATION)

---

[4]  She did not deny that she entered Cal Oaks after she was terminated, when the business was not open, and when she did not have the code for the alarm system.

[5]  Because Officer Dean had probable cause to arrest Gill, Gill's claims against all other defendants cannot survive.